**Jay E. ECKHAUS, Plaintiff,**

v.

**ALFA–LAVAL, INC., Defendant.**

**No. 90 Civ. 4314 (RPP).**

United States District Court,
S.D. New York.

May 13, 1991.

George R. Osborne, New York City by George R. Osborne, for plaintiff.

Cravath, Swaine & Moore, New York City by Alan J. Hruska, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is a diversity action in which plaintiff, former general counsel of defendant Alfa–Laval, Inc. ("Alfa–Laval"), seeks damages for defamation. Defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint on the grounds that further prosecution of this action would violate the New York Code of Professional Responsibility. Defendant also seeks summary judgment on its counterclaim alleging breach of contract and breach of fiduciary duty. For the reasons set forth below, defendant's motion for summary judgment dismissing the complaint is granted while defendant's motion for summary judgment on its counterclaim is denied.

## BACKGROUND

Plaintiff Jay Eckhaus ("Eckhaus") served as general counsel of defendant Alfa–Laval from September 18, 1989 to June 20, 1990 when he resigned after a series of disputes with Alfa–Laval's president and chief executive officer, David Nichols ("Nichols"). Eckhaus also served as vice president and corporate secretary from December 1989 until he resigned.

Eckhaus had responsibility for a wide variety of legal matters including environmental issues, product liability disputes and corporate mergers and acquisitions. The defamation alleged in the complaint concerns a memorandum of June 11, 1990 and related discussions with Alfa–Laval executives.

Eckhaus suffered a heart attack on February 23, 1990 and did not return to work until March 19, 1990. On April 24, 1990 he was hospitalized for heart surgery and spent the next several months on paid leave recuperating. When Eckhaus returned to work on June 11, 1990, Nichols called him in to discuss his job performance.[1] At various points during the meeting, which Eckhaus claims lasted two hours, Eckhaus Aff. ¶ 49, the following persons were asked to join the meeting one at a time: Eileen Wenegrat, assistant corporate secretary, Barry Sullivan, vice president and treasurer, and Quintin Jackson, vice president. The parties dispute whether it was Nichols or Eckhaus who requested the other employees' presence. Eckhaus Aff. ¶ 49; Nichols Aff. ¶ 5.

A two-page performance evaluation dated June 11, 1990 (attached to the complaint) signed by Nichols and marked "confidential" covers the relevant issues discussed at the meeting. The memo reads in pertinent part:

It now appears that on several occasions you have given inappropriate legal advice, exercised poor business judgment and failed to carry out your management duties in a professional manner. Examples of these are:

—the mishandling of the Park Ridge lease

—poor advice given on the termination of Valarie Rose

—poor review and advice (re: handling of personnel files—V. Rose)

—inappropriate selection of counsel on the environmental matters

—convoluted strategy on giving notice to insurance carriers

—refusal to consider decentralization of Secretarial functions

—advice given on the Mazza cheese project

—constant over-ruling of minor decisions made by your staff

—failure to develop and maintain the confidence and respect of your staff and colleagues.

Complaint filed June 28, 1990, Exh. A. The memo continues, "[U]nder these circumstances I feel obliged to restrict your activities and responsibilities for an interim period until such time as this confidence is restored." The memo concludes with a list of six instructions including submission of weekly progress reports to Nichols, withdrawal from participation in environmental matters and delegation of attendance at Board meetings.

The following day, June 12, 1990, Nichols held a meeting to discuss certain environmental issues facing the company. Eckhaus, Jackson, assistant general counsel Steve Harris and risk manager John Fromholtz attended the meeting. Eckhaus Aff. ¶ 54; Nichols Aff. ¶ 6. Eckhaus claims this meeting was devoted to discussion of the

---

**1.** Plaintiff's employment contract with Alfa–Laval provides for termination for cause. "Cause" is defined to include:

the willful and continued failure by the Employee to substantially and materially perform the Employee's duties with the Company ... after a demand for substantial performance is delivered to the Employee that specifically identifies the manner in which the Company believes that the Employee has failed to substantially perform the Employee's duties, and the Employee has failed to resume substantial performance of the Employee's duties on a continuous basis within thirty (30) days....

Appendix to Memorandum of Plaintiff in Opposition to Motion for Summary Judgment ("Pl. App."), Exh. B.

same allegedly defamatory accusations levelled at him the previous day. Eckhaus Aff. ¶ 55.

On June 20, 1990 plaintiff resigned from Alfa–Laval. Thereafter, plaintiff commenced an arbitration proceeding concerning his rights under his employment contract which is currently being litigated.[2]

The complaint in this action alleges that the June 11, 1990 memorandum contains false statements of fact published by defendant to Wenegrat, Sullivan and Jackson with reckless disregard for the truth. In opposition to the motion charging further prosecution would violate the Code of Professional Responsibility, plaintiff's affidavit outlines what he believes to be the background for defendant's defamatory allegations of professional incompetence with respect to the following matters:

1. *The Jones Site*—On January 4, 1990 the operator of a septic processing facility in Dutchess County, New York ("the Jones site") which had accepted waste from Alfa–Laval in the 1960's and 1970's notified Alfa–Laval that the site had been identified by the New York Department of Environmental Protection and the U.S. Environmental Protection Agency as a hazardous waste site. Nichols Aff., Exh. A. Thereafter, Eckhaus retained the law firms of Dewey Ballantine and Whiteman, Osterman & Hanna to render advice in connection with the Jones site. Eckhaus Aff. ¶ 12. In June 1990 Eckhaus approved notification letters sent by Whiteman, Osterman & Hanna to Alfa–Laval's insurance carriers. *Id.* ¶¶ 15–16; Nichols Aff., Exhs. 2–4. Nichols took issue with the content of these letters.

2. *Valarie Rose Termination*—Eckhaus responds he was asked by Jack Adams, Alfa–Laval's vice president in charge of human resources, to remove documents from personnel files which Alfa–Laval was required to produce by counsel for Valarie Rose, a former Alfa–Laval employee, in connection with a discrimination complaint she had filed with the New Jersey Division of Human Rights. Eckhaus Aff. ¶¶ 30–31. Eckhaus states he refused to remove the documents and instructed Adams not to do so. *Id.* ¶ 32.

3. *Mazza Cheese Company*—In December 1989 Alfa–Laval received complaints from Mazza Cheese Company ("Mazza") regarding a cheese processing system originally sold by an Alfa–Laval subsidiary to another company which in turn sold the machine to Mazza Cheese Company. Eckhaus Aff. ¶ 33. The original contract of sale was negotiated by Eckhaus' predecessor, Goran Ohlson, who now works for Alfa–Laval's parent company in Sweden. *Id.* ¶ 34. Eckhaus alleges that when he brought Mazza's apparent threat of a product liability suit to Nichols' attention, Nichols said, "Since the Swedes screwed this one up, let them handle it." *Id.* ¶ 35. Despite this instruction, Eckhaus reviewed the contract and an opinion letter from outside counsel but had little active participation in resolving the matter, other than identifying for Nichols the express contractual terms exempting Alfa–Laval from liability. *Id.* ¶¶ 36–38.

4. *TW Cutter Acquisition*—Eckhaus retained Paul McGrath, Esq. and the law firm of Dewey Ballantine to prepare and file documents relating to Alfa–Laval's acquisition of the TW Cutter company. Eckhaus states that in preparing the filings he discovered documents from Sweden showing "a potential noncompetitive post-acquisition environment." Eckhaus Aff. ¶ 25. Eckhaus further responds that Nichols instructed him to destroy these documents which Eckhaus refused to do. *Id.* ¶¶ 25–26. In June 1990 Nichols is alleged to have instructed Eckhaus to discontinue using Dewey Ballantine for any purpose. *Id.* ¶ 27.

Defendant's motion for summary judgment dismissing the complaint is grounded solely on the proposition that further prosecution of this defamation action will re-

---

**2.** Eckhaus' employment agreement provides: "Any dispute arising under, out of or in connection with this Agreement shall be settled exclusively by Arbitration in New York City...."

Appendix to Pl.Mem. in Opp., Exh. B at ¶ 12. Accordingly any possible claim for constructive discharge would be cognizable in such a nonpublic forum.

quire plaintiff to reveal client "confidences" and "secrets" in violation of Disciplinary Rule ("DR") 4–101 of the New York Code of Professional Responsibility.[3] There are no issues of fact in connection with defendant's motion.

## DISCUSSION

▮ Although plaintiff's complaint states a cause of action for defamation, the law strikes the appropriate balance between the rights of an attorney to seek compensation for injuries suffered at the hand of a client and the right of the client not to be held hostage to an attorney's threat to reveal confidential information.[4] That balance is incorporated in Disciplinary Rule ("DR") 4–101 of the New York Code of Professional Responsibility which provides:

A. "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client.

B. Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

1. Reveal a confidence or secret of a client.

. . . .

C. A lawyer may reveal:

. . . .

4. Confidences or secrets necessary to establish or collect the lawyer's fee or to defend the lawyer or his or her employees or associates against an accusation of wrongful conduct.

▮ Thus the general rule is that the attorney may not knowingly reveal any client confidence or secret. Defendant maintains that Eckhaus' prosecution of this action involves a pattern of violations of this rule. Defendant first points to the complaint which reveals a portion of a confidential, internal memorandum in which the President of Alfa–Laval states he believed Eckhaus pursued a "convoluted" strategy in notifying insurance carriers of the existence of a hazardous waste site. Complaint ¶ 16(h) & Exh. A. Defendant further points to plaintiff's affidavit in opposition which contains allegations that corporate officers intended to destroy documents they were required to produce in litigation. These allegations are not limited to the matters raised by Nichols' June 11 memorandum but raise wholly new issues relating to Alfa–Laval's acquisition of T.W. Cutter and alleged employment of illegal aliens.

Plaintiff justifies his revelations by relying on the exception to the general rule set forth in DR 4–101(C)(4). By raising wholly new issues plaintiff has exceeded the scope of DR 4–101(C)(4). Furthermore the cases applying DR 4–101(C)(4) are cases in which the client initiated the lawsuit and where the "accusation of wrongful conduct" is asserted as a formal claim against the attorney. *See, e.g., Meyerhofer v. Empire Fire & Marine Ins. Co.*, 497 F.2d 1190, 1194–95 (2d Cir.) (complaint charging attorney with knowing participation in filing of

---

**3.** One other dispute between Nichols and Eckhaus, related to alleged mishandling of the lease of Alfa–Laval's office space ("the Park Ridge lease"), is raised in plaintiff's complaint as a basis for his defamation claims. Although defendant has nowhere identified any client confidences or secrets which might be revealed in connection with this matter, the allegations pertaining thereto do not, in this Court's judgment, constitute defamation.

**4.** The elements of a prima facie case of defamation are (1) a defamatory statement of fact; (2) regarding the plaintiff; (3) publication to a third party by the defendant; (4) falsity; (5) some degree of fault; and (6) injury to the plaintiff. 2 NY PJI 98 (Supp.1990). *See also*

*Angio–Medical Corp. v. Eli Lilly & Co.*, 720 F.Supp. 269, 272 (S.D.N.Y.1989). Because Eckhaus is a private figure, Alfa–Laval is a non-media defendant and the allegedly defamatory statements concern matters of purely private concern amounting to libel or slander per se, the last three elements of plaintiff's claim, including falsity, are presumed and need not be proven. 2 NY PJI 123 (Supp.1990). *See generally Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775–76, 106 S.Ct. 1558, 1563–64, 89 L.Ed.2d 783 (1986); *Handelman v. Hustler Magazine, Inc.*, 469 F.Supp. 1048, 1051 (S.D.N.Y. 1978); *Immuno, A.G. v. J. Moor–Jankowski*, 145 A.D.2d 114, 537 N.Y.S.2d 129, 135 (App.Div. 1989).

a false and misleading securities registration), *cert. denied,* 419 U.S. 998, 95 S.Ct. 314, 42 L.Ed.2d 272 (1974); *Heartbreak Cabaret Corp. v. Cruz & Toledo Restaurant Corp.,* 699 F.Supp. 1066, 1070–71 (S.D.N.Y.1988) (suit by former client charging attorney with trademark infringement, breach of fiduciary duty and civil RICO violations); *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.,* 110 F.R.D. 557, 566 (S.D.N.Y.1986) (third-party complaint brought by former client charging attorney with aiding and abetting securities fraud).[5]  *See generally Housler v. First Nat'l Bank of East Islip,* 484 F.Supp. 1321, 1323 (E.D.N.Y.1980) ("If any disclosure of such confidences is to be made, it may only be in the narrow context of [the attorney's] own defense."). Informal charges made during a performance review of an in-house attorney specifically contemplated by his employment contract do not amount to "an accusation of wrongful conduct" under these authorities.[6] Accordingly, Eckhaus may not avail himself of DR 4–101(C)(4) in prosecuting this action.

Plaintiff's affidavit in opposition is evidence of his intent to reveal further facts constituting client confidences and secrets in violation of DR 4–101(B). That affidavit makes clear his effort to achieve, by a defamation action, an adjudication of the disputes underlying his resignation from Alfa–Laval. Permitting disclosure of client confidences and secrets under these circumstances would impinge upon the sanctity of the attorney-client relationship in a manner not contemplated by the Disciplinary Rules. Accordingly, defendant's motion for summary judgment dismissing the complaint is granted. Defendant's motion

for summary judgment on its counterclaim is denied however and plaintiff is free to defend himself from the claims therein unless defendant files a stipulation of dismissal pursuant to Rule 41(c) of the Federal Rules of Civil Procedure before any responsive pleading is filed.

IT IS SO ORDERED.

---

**5.** *See also Brandt v. Schal Assocs., Inc.,* 121 F.R.D. 368, 385 n. 48 (N.D.Ill.1988) (suggesting that claim for Rule 11 sanctions would be "an accusation of wrongful conduct" under DR 4–101(C)(4)).

**6.** Dictum in *First Federal Savings & Loan* that DR 4–101(C)(4) "appears to encompass disclosure when ... an 'accusation' of misconduct has been levelled against the attorney, even if a suit has not been filed," 110 F.R.D. at 562, refers to accusations against an attorney raised by administrative proceedings or during criminal

grand jury investigations. *See, e.g., Rosen v. N.L.R.B.,* 735 F.2d 564, 576 (D.C.Cir.1984) (finding by administrative law judge that attorney had suborned perjury); *S.E.C. v. Forma,* 117 F.R.D. 516, 524 (S.D.N.Y.1987) (attorney under investigation by S.E.C.); *Application of Friend,* 411 F.Supp. 776 (S.D.N.Y.1975) (grand jury investigation of attorney). The rationale behind these cases is that an attorney under official investigation need not await the filing of an indictment or other formal charges to explain his conduct and clear his reputation.