Edward A.H. SIEDLE, Plaintiff, Appellee,

v.

PUTNAM INVESTMENTS, INC.,
Defendant, Appellant.

No. 98–1109.

United States Court of Appeals,
First Circuit.

Heard May 7, 1998.

Decided June 16, 1998.

Dennis M. Kelleher, with whom Andrew J. Hachey and Skadden, Arps, Slate, Meagher & Flom LLP were on brief, for appellant.

Morris M. Goldings, with whom Richard S. Jacobs and Mahoney, Hawkes & Goldings were on brief, for appellee.

Before SELYA, Circuit Judge, CAMPBELL and CYR, Senior Circuit Judges.

**SELYA, Circuit Judge.**

Like competing centrifugal and centripetal forces, the presumptive right of public access to judicial records and the duty of confidentiality that an attorney owes to a former client push and pull in this appeal. Reconciling these important interests, we hold that the district court abused its discretion when it summarily unsealed all the filings in an action brought by a lawyer against his former client.

## I. BACKGROUND

Defendant-appellant Putnam Investments, Inc. (Putnam) operates a large, multifaceted financial services business. It employed plaintiff-appellee Edward A.H. Siedle as an in-house counsel at its Boston headquarters in the mid–1980s. Siedle's responsibilities included monitoring Putnam's compliance with federal and state securities laws and with the company's self-imposed code of ethics.

The circumstances surrounding Siedle's departure from Putnam's ranks are conflicted. For present purposes, it suffices to say that disagreements between Siedle and senior management rendered a continuing employment relationship infeasible. Putnam and Siedle parted company on October 21, 1988, and Siedle promptly retained counsel to iron out various wrinkles incident to the severing of this tie. Negotiations produced a termination agreement (the Agreement), signed on February 14, 1989, in which the parties agreed that Siedle's departure had come about by mutual consent, that each would "refrain from making any adverse public or private comment about the other," and that Siedle would not disclose any "nonpublic documents, materials or information in whatever form" obtained in the course of his employment. The parties specifically acknowledged that this last obligation was cumulative of Siedle's duties under the "Code of Professional Responsibility and the common law governing the attorney-client privilege."

Notwithstanding his departure, Siedle elected to maintain a retirement account with Putnam. In early 1997, Putnam informed him that, due to a clerical bevue, it had erroneously credited Siedle's account to the tune of approximately $15,000. Putnam unilaterally deducted the alleged overpayment from Siedle's account balance. This action proved to be the wind that fanned the still-smoldering embers of the failed relationship. A conflagration erupted.

In short order, Siedle told his tale to *Pensions & Investments* (*P & I*), a prominent weekly trade magazine.[1] In a May 1997 issue, *P & I* published an article captioned "Putnam, Ex-Employee At Odds Over Benefits." The story attributed to Siedle some unflattering comments about Putnam's administration of retirement accounts. Putnam promptly criticized the article for "tak[ing] an isolated record-keeping dispute between Putnam and a lawyer the company fired nine years ago and suggest[ing] a whole range of questions about our performance and capabilities." *P & I* published Putnam's rejoinder as a "letter to the editor" in its May 26 issue.

Siedle took umbrage and sued Putnam in a Massachusetts state court for breach of contract, interference with advantageous business relationships, and conversion. Noting the parties' diverse citizenship and Siedle's large ad damnum, Putnam removed the action to the federal district court, *see* 28 U.S.C. §§ 1332(a), 1441, and asserted a coterie of counterclaims.

Siedle's complaint shapes the contours of the current controversy. It contains a paragraph that, in Putnam's view, needlessly divulges information obtained in the course of the parties' attorney-client relationship. Putnam contends that the applicable disciplinary rule, Massachusetts Supreme Judicial Court (SJC) Rule 3:07, Canon 4, DR 4–101 (West 1997), requires that Siedle hold the contents of this scarlet paragraph in strictest

---

1. Putnam alleges that, in addition to provoking this magazine article and the newspaper coverage described *infra*, Siedle instigated a United States Department of Labor investigation into its business practices. That allegation indicates the acrimony between the parties, but it is not strictly germane to the issues before us and we do not pursue it here.

confidence.[2] Moreover, Putnam insists that this breach of trust was hardly a slip of the pen; to bolster this point, a Putnam executive signed an affidavit in which he swore that Siedle threatened to disclose other privileged materials unless the company knuckled under and effected a lucrative settlement of Siedle's lawsuit.

In rapid sequence, Putnam obtained a temporary restraining order, a seal order, and a preliminary injunction. Collectively, these edicts impounded virtually all the pleadings, directed the parties to submit all future filings under seal, and prohibited Siedle from disclosing any information that was subject to the attorney-client privilege or the confidentiality requirements of the Agreement.[3] Siedle did not oppose any of these requests for interim relief, and they remained in effect for the next several months.

On January 12, 1998, the *New York Times* sought and received, without opposition from either party, access to the seal order. At a February 6 scheduling conference, a lawyer for the newspaper appeared and requested that the court lift the seal. With surprisingly little fanfare, the court acquiesced and opened the case file. Putnam moved for reconsideration in the district court and, when that motion failed, successfully sought an appellate stay. We set an expedited briefing schedule on motion of the *New York Times* and issued an order allowing public access to most (but not all) of the parties' past filings, preserving the confidentiality of only five specific documents (or portions of documents) that Putnam asserts contain privileged information. We also installed a redaction procedure, discussed *infra* note 6, referable to future filings.

For reasons that were never explained, the *New York Times* moved to withdraw as an intervenor approximately three weeks prior to the date set for oral argument. We granted its motion. Siedle presses on, opposing any reimposition of the district court's seal order.

## II. DISCUSSION

■ Unsealing orders usually warrant immediate review under the collateral order doctrine. *See FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 407 (1st Cir.1987). After all, certain interests only can be preserved by a seal order, and the interest that Putnam asserts here—its desire to ensure that materials subject to the attorney-client privilege are shielded from the public eye—is of that genre. When, as now, a seal order is granted to protect such an interest, and then revoked, an immediate appeal will lie. Compelling a party that disputes an unsealing order to forgo an appeal until the conclusion of the underlying litigation would "let the cat out of the bag, without any effective way of recapturing it if the district court's directive was ultimately found to be erroneous." *Irons v. FBI*, 811 F.2d 681, 683 (1st Cir.1987); *accord Standard Fin. Mgmt.*, 830 F.2d at 407. Hence, we have jurisdiction over this interlocutory appeal.

■ The common law presumes a right of public access to judicial records. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986). This presumption stakes out the battleground on which this appeal must be fought.[4] It stems from the premise

2. The SJC recently revamped Rule 3:07 and adopted a series of rules of professional conduct derived from the ABA's Model Rules of Professional Responsibility. *See* Massachusetts Rules of Court, Supreme Judicial Court Rule 3:07 (West 1998). Professional Conduct Rule 1.6, a subset of the new Rule 3:07, now covers the subject matter formerly addressed by DR 4–101. Because the relevant revision did not take effect until March 1, 1998 (well after Siedle filed his complaint), we view the now-superseded DR 4–101 as the appropriate benchmark.

3. On August 14, 1997, six days after the district court issued the temporary restraining order, the

*Wall Street Journal* published an article about the current controversy. Putnam claims that this, too, divulged information derived from Siedle and protected by the attorney-client privilege. Siedle admits that he initiated contact with the newspaper but insists that all his disclosures occurred prior to the issuance of the temporary restraining order.

4. To be sure, the *New York Times* argued that it had an independent right of access to judicial materials, secured by the First Amendment. Because the *New York Times* voluntarily withdrew from the litigation, we need not reach this nettlesome constitutional issue. Siedle's attempt to

that public monitoring of the judicial system fosters the important values of "quality, honesty and respect for our legal system." *Standard Fin. Mgmt.*, 830 F.2d at 410 (citation and internal quotation marks omitted). The presumption extends to records of civil proceedings. *See id.* at 408 n. 4.

■ Though the public's right of access to such materials is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access. *See id.* at 410. It follows that when a party requests a seal order, or, as in this case, objects to an unsealing order, a court must carefully balance the competing interests that are at stake in the particular case. *See Nixon*, 435 U.S. at 599, 98 S.Ct. 1306; *In re Globe Newspaper Co.*, 920 F.2d 88, 96 (1st Cir.1990).

■ The trial court enjoys considerable leeway in making decisions of this sort. Thus, once the trial court has struck the balance, an appellate court will review its determinations only for mistake of law or abuse of discretion. *See Standard Fin. Mgmt.*, 830 F.2d at 411. In these purlieus, as elsewhere, a district court may abuse its discretion by ignoring a material factor that deserves significant weight, relying on an improper factor, or, even if it mulls only the proper mix of factors, by making a serious mistake in judgment. *See Henry v. INS*, 74 F.3d 1, 4 (1st Cir.1996); *Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988).

■ In this case, the district court rescinded the seal order after a brief colloquy with counsel for Putnam, Siedle, and the *New York Times.* The court did not write a decision or otherwise detail its reasons for lifting the seal order. Thus, our review proceeds from the historical facts (which, insofar as pertinent here, are largely uncontested), coupled with the rather meager statements found in the transcript of the conference.

The relevant facts include Siedle's service as Putnam's in-house counsel (giving rise to an attorney-client privilege) and the nature of his duties (lending plausibility to the claim that the passages about which Putnam complains reflect information acquired during and in the course of the attorney-client relationship). The pertinent portions of the transcript are less informative. Once the newspaper's attorney requested that the court abrogate the seal order, the district judge asked Putnam's counsel: "[W]hat is it about this case that merits the sealing of the documents? Just because it is going to be a news story, why is that different from hundreds of other cases that w[i]nd their way through the Federal Court?" Putnam's lawyer responded with a narrative history of the case and noted that Siedle's filings included privileged attorney-client information. The judge replied: "That is another lawsuit, maybe." He then observed that the allegedly privileged material seemed necessary to establish Siedle's claim and stated his intention to lift the seal order. Later in the conference, Putnam's counsel beseeched the judge to revisit his decision and offered a brief on the point. The judge declined the proffer and advised counsel that an order unsealing the case file would issue forthwith.

■ At some level, the transcript suggests that the district court viewed Putnam's justification for retaining the seal order as based upon nothing more than fear of adverse publicity. If that were so, lifting the seal order would have been proper. The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access. *See, e.g., Central Nat'l Bank of Mattoon v. United States Dep't of Treasury*, 912 F.2d 897, 900 (7th Cir.1990); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179–80 (6th Cir.1983). Here, however, it is crystal clear that Putnam put forward a valid legal reason, apart from any generalized concerns about notoriety, for championing a seal order: it sought to prevent Siedle from unilaterally

"adopt" the *Times'* position is impuissant. *See, e.g., United States v. David*, 940 F.2d 722, 737 (1st Cir.1991) (holding adoptable on appeal only those arguments that readily transfer from the

particular circumstances of the proponent's case to the particular circumstances of the putative adopter's case).

placing its privileged attorney-client information in the public domain.

The critical role that attorney-client privilege plays in facilitating the administration of justice is beyond question, *see, e.g., Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Whitehouse v. United States Dist. Court for the Dist. of R.I.,* 53 F.3d 1349, 1360 (1st Cir.1995), and we need not wax longiloquent in its defense. Suffice to say that the interest in preserving a durable barrier against disclosure of privileged attorney-client information is shared both by particular litigants and by the public, and it is an interest of considerable magnitude. Indeed, this is precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records. *See Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1073 (3d Cir.1984); *Crystal Grower's Corp. v. Dobbins,* 616 F.2d 458, 461–62 (10th Cir.1980).

In this instance, we discern no evidence that the district court identified and balanced the interests at stake, or that the court endeavored to determine whether any information contained in Siedle's filings actually fell within the ambit of the attorney-client privilege. In the circumstances at hand, these omissions amount to an abuse of discretion. We explain briefly.

■ The information that Putnam wishes to keep under seal appears on its face to be subject to both the attorney-client privilege and the parallel confidentiality requirements imposed by the Agreement. In the idiom of DR 4–101, the information is seemingly of the type "gained in the professional relationship," and is matter "that the client has requested be held inviolate" and that "would likely ... be detrimental to the client" if revealed. Supreme Judicial Court Rule 3:07, Canon 4, DR 4–101.[5] Indeed, Siedle does not seriously contend that the information falls beyond the ken of these requirements. He urges instead that an exception governs here because disclosure of the information is necessary "to defend himself ... against an accusation of wrongful conduct." *Id.* DR 4–

101(C)(4). We find this argument unpersuasive.

Massachusetts narrowly construes the exceptions to an attorney's duty to guard client confidences. *See GTE Prods. Corp. v. Stewart,* 421 Mass. 22, 653 N.E.2d 161, 166–67 (1995). To be sure, DR 4–101(C)(4)'s disclosure provisions empower an attorney to reveal information that ordinarily would be sacrosanct in order to defend himself against charges of ineffective assistance, *see Commonwealth v. Woodberry,* 26 Mass.App.Ct. 636, 530 N.E.2d 1260, 1261 (1988), or professional malpractice, *see Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783, 788 (1991). While *Woodberry* illustrates that the "accusation of wrongful conduct" of which DR 4–101(C)(4) speaks need not necessarily involve an actual suit filed by a quondam client against his former attorney, it cannot be gainsaid that DR 4–101(C)(4) creates a *defensive* mechanism for lawyers under siege. Siedle has not pointed us to, and our research has failed to unearth, a single reported case from any jurisdiction in which an attorney has been permitted to use confidential information *offensively* when the attorney chafed at the client's criticism of his work (even if the attorney viewed that criticism as defamatory). The only reported case dealing with a similar factual situation holds precisely to the contrary. *See Eckhaus v. Alfa–Laval, Inc.,* 764 F.Supp. 34, 37–38 (S.D.N.Y.1991).

We believe that the exception is designed to function only as a shield, not as a sword. Consequently, interpreting DR 4–101(C)(4) to allow disclosure under the circumstances of this case would work a substantial and detrimental change in the integrity of the attorney-client privilege as that privilege has been enunciated in Massachusetts. In our judgment, such a change would be antithetic to applicable ethical rules. Moreover, the Massachusetts courts have cautioned against reading exceptions to the duty of confidentiality too broadly and that caution counsels convincingly against an unprecedented expansion of DR 4–101(C)(4) along the lines

---

5. This conclusion also would follow under the SJC's neoteric formulation of the rule because the information in question "relat[es] to repre-

sentation" of Putnam by Siedle. Supreme Judicial Court Rule 3:07, Massachusetts Rule of Professional Conduct 1.6 (1998).

advocated by Siedle. *Cf. Carlton v. Worcester Ins. Co.*, 923 F.2d 1, 3 (1st Cir.1991) (cautioning that federal courts exercising diversity jurisdiction generally should avoid steering state law into uncharted waters).

The inapplicability of Siedle's claimed exception to his duty of confidentiality brings us full circle. Without further factfinding, we are left at this stage of the litigation with information in various filings that appears to fall within the attorney-client privilege. There is no hint of waiver; indeed, Putnam has vigorously pressed its attorney-client privilege throughout. The fact that the allegedly privileged information may be necessary to permit Siedle to plead his claim with the requisite specificity—a fact alluded to both by Siedle and by the lower court—is beside any pertinent point. Merely sealing that information would not in any way render Siedle's complaint inadequate. Finally, if the appropriate parts of the record do not remain sealed for the time being, Putnam irretrievably will lose the benefit of a privilege that, on the face of things, appears to attach.

When an attorney and a former client embroil themselves in adversarial litigation, the right of public access to judicial records stands in sharp contrast to the lawyer's duty to hold information obtained from the client during the course of representation in the strictest confidence. A delicate balance must be struck between these competing concerns. We hold that the court below misgauged this balance. Putnam has made a sufficient showing that various filings contain privileged information, and without either an adjudication of the privilege question or an appropriate seal order, Putnam will lose the entire benefit of the putative privilege. We cannot countenance such a result. *See Standard Fin. Mgmt.*, 830 F.2d at 407; *Irons*, 811 F.2d at 683–84.

Let us be perfectly clear. We do not hold that the materials which Putnam claims are privileged necessarily must remain under permanent seal. As the record develops and additional facts are adduced, the district court may find that Putnam's claims of privilege are unsupported or that some applicable exception penetrates the attorney-client shield. Until such time, however, we hold that Putnam's unrebutted prima facie showing that the attorney-client privilege applies entitles it to protection. *Cf. Publicker Indus.*, 733 F.2d at 1073 (suggesting that, to ensure the benefit of the privilege, a court may enjoin the disclosure of information "arguably within the attorney-client privilege").

We need go no further. We reverse the district court's unsealing order and remand for further proceedings consistent herewith, including the entry of an appropriate seal order. To this end, we note that on March 6, 1998, this court issued an order designed to protect Putnam's claim of attorney-client privilege during the pendency of its appeal. We commend the basic framework of this order to the court below, as we believe that it provides an appropriate (and minimally intrusive) model for protecting arguably privileged material while at the same time minimizing the concomitant curtailment of the public's right of access to court filings.[6] Until the district court enters a fresh seal order, our March 6 order shall remain in force.

*We reverse the order unsealing the record in this case and remand for the entry of a seal order consistent with this opinion. Costs to appellant.*

---

**6.** Tailored to the district court's needs, the framework of the order that we envision would require that the five filings heretofore identified by Putnam as containing material within the attorney-client privilege will remain under seal (though the district court may authorize the release of, or afford public access to, redacted versions of these filings). As the litigation proceeds, the seal order would require that each party's pleadings be placed under seal in the first instance. As to filings originating with Putnam, Putnam would simultaneously submit redacted versions, camouflaging only information that it claims in good faith is protected by the attorney-client privilege. As to filings originating with Siedle, Putnam should, within a short period after receiving the served copy of any such filing, proffer to the district court a version of it from which Putnam has redacted information that it believes in good faith falls within the attorney-client privilege. The redacted versions of all future filings should be publicly available, and the district court should put in place a process for resolving any redaction-related disputes.