USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1109

 EDWARD A.H. SIEDLE,

 Plaintiff, Appellee,

 v.

 PUTNAM INVESTMENTS, INC.,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Joseph L. Tauro, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Campbell and Cyr, Senior Circuit Judges.
 
 

 Dennis M. Kelleher, with whom Andrew J. Hachey and Skadden,
Arps, Slate, Meagher & Flom LLP were on brief, for appellant.
 Morris M. Goldings, with whom Richard S. Jacobs and Mahoney,
Hawkes & Goldings were on brief, for appellee.

June 16, 1998

 SELYA, Circuit Judge. Like competing centrifugal and
centripetal forces, the presumptive right of public access to
judicial records and the duty of confidentiality that an attorney
owes to a former client push and pull in this appeal. Reconciling
these important interests, we hold that the district court abused
its discretion when it summarily unsealed all the filings in an
action brought by a lawyer against his former client.
I. BACKGROUND
 Defendant-appellant Putnam Investments, Inc. (Putnam)
operates a large, multifaceted financial services business. It
employed plaintiff-appellee Edward A.H. Siedle as an in-house
counsel at its Boston headquarters in the mid-1980s. Siedle's
responsibilities included monitoring Putnam's compliance with
federal and state securities laws and with the company's self-
imposed code of ethics.
 The circumstances surrounding Siedle's departure from
Putnam's ranks are conflicted. For present purposes, it suffices
to say that disagreements between Siedle and senior management
rendered a continuing employment relationship infeasible. Putnam
and Siedle parted company on October 21, 1988, and Siedle promptly
retained counsel to iron out various wrinkles incident to the
severing of this tie. Negotiations produced a termination
agreement (the Agreement), signed on February 14, 1989, in which
the parties agreed that Siedle's departure had come about by mutual
consent, that each would "refrain from making any adverse public or
private comment about the other," and that Siedle would not
disclose any "non-public documents, materials or information in
whatever form" obtained in the course of his employment. The
parties specifically acknowledged that this last obligation was
cumulative of Siedle's duties under the "Code of Professional
Responsibility and the common law governing the attorney-client
privilege."
 Notwithstanding his departure, Siedle elected to maintain
a retirement account with Putnam. In early 1997, Putnam informed
him that, due to a clerical bevue, it had erroneously credited
Siedle's account to the tune of approximately $15,000. Putnam
unilaterally deducted the alleged overpayment from Siedle's account
balance. This action proved to be the wind that fanned the still-
smoldering embers of the failed relationship. A conflagration
erupted.
 In short order, Siedle told his tale to Pensions &
Investments (P&I), a prominent weekly trade magazine. In a May
1997 issue, P & I published an article captioned "Putnam, Ex-
Employee At Odds Over Benefits." The story attributed to Siedle
some unflattering comments about Putnam's administration of
retirement accounts. Putnam promptly criticized the article for
"tak[ing] an isolated record-keeping dispute between Putnam and a
lawyer the company fired nine years ago and suggest[ing] a whole
range of questions about our performance and capabilities." P&Ipublished Putnam's rejoinder as a "letter to the editor" in its May
26 issue.
 Siedle took umbrage and sued Putnam in a Massachusetts
state court for breach of contract, interference with advantageous
business relationships, and conversion. Noting the parties'
diverse citizenship and Siedle's large ad damnum, Putnam removed
the action to the federal district court, see 28 U.S.C. 1332(a),
1441, and asserted a coterie of counterclaims.
 Siedle's complaint shapes the contours of the current
controversy. It contains a paragraph that, in Putnam's view,
needlessly divulges information obtained in the course of the
parties' attorney-client relationship. Putnam contends that the
applicable disciplinary rule, Massachusetts Supreme Judicial Court
(SJC) Rule 3:07, Canon 4, DR 4-101 (West 1997), requires that
Siedle hold the contents of this scarlet paragraph in strictest
confidence. Moreover, Putnam insists that this breach of trust
was hardly a slip of the pen; to bolster this point, a Putnam
executive signed an affidavit in which he swore that Siedle
threatened to disclose other privileged materials unless the
company knuckled under and effected a lucrative settlement of
Siedle's lawsuit.
 In rapid sequence, Putnam obtained a temporary
restraining order, a seal order, and a preliminary injunction. 
Collectively, these edicts impounded virtually all the pleadings,
directed the parties to submit all future filings under seal, and
prohibited Siedle from disclosing any information that was subject
to the attorney-client privilege or the confidentiality
requirements of the Agreement. Siedle did not oppose any of
these requests for interim relief, and they remained in effect for
the next several months.
 On January 12, 1998, the New York Times sought and
received, without opposition from either party, access to the seal
order. At a February 6 scheduling conference, a lawyer for the
newspaper appeared and requested that the court lift the seal. 
With surprisingly little fanfare, the court acquiesced and opened
the case file. Putnam moved for reconsideration in the district
court and, when that motion failed, successfully sought an
appellate stay. We set an expedited briefing schedule on motion of
the New York Times and issued an order allowing public access to
most (but not all) of the parties' past filings, preserving the
confidentiality of only five specific documents (or portions of
documents) that Putnam asserts contain privileged information. We
also installed a redaction procedure, discussed infra note 6,
referable to future filings.
 For reasons that were never explained, the New York Timesmoved to withdraw as an intervenor approximately three weeks prior
to the date set for oral argument. We granted its motion. Siedle
presses on, opposing any reimposition of the district court's seal
order.
II. DISCUSSION
 Unsealing orders usually warrant immediate review under
the collateral order doctrine. See FTC v. Standard Fin. Mgmt.
Corp., 830 F.2d 404, 407 (1st Cir. 1987). After all, certain
interests only can be preserved by a seal order, and the interest
that Putnam asserts here its desire to ensure that materials
subject to the attorney-client privilege are shielded from the
public eye is of that genre. When, as now, a seal order is
granted to protect such an interest, and then revoked, an immediate
appeal will lie. Compelling a party that disputes an unsealing
order to forgo an appeal until the conclusion of the underlying
litigation would "let the cat out of the bag, without any effective
way of recapturing it if the district court's directive was
ultimately found to be erroneous." Irons v. FBI, 811 F.2d 681, 683
(1st Cir. 1987); accord Standard Fin. Mgmt., 830 F.2d at 407. 
Hence, we have jurisdiction over this interlocutory appeal.
 The common law presumes a right of public access to
judicial records. See Nixon v. Warner Communications, Inc., 435
U.S. 589, 597 (1978); Anderson v. Cryovac, Inc., 805 F.2d 1, 13
(1st Cir. 1986). This presumption stakes out the battleground on
which this appeal must be fought. It stems from the premise that
public monitoring of the judicial system fosters the important
values of "quality, honesty and respect for our legal system." 
Standard Fin. Mgmt., 830 F.2d at 410 (citation and internal
quotation marks omitted). The presumption extends to records of
civil proceedings. See id. at 408 n.4.
 Though the public's right of access to such materials is
vibrant, it is not unfettered. Important countervailing interests
can, in given instances, overwhelm the usual presumption and defeat
access. See id. at 410. It follows that when a party requests a
seal order, or, as in this case, objects to an unsealing order, a
court must carefully balance the competing interests that are at
stake in the particular case. See Nixon, 435 U.S. at 599; In re
Globe Newspaper Co., 920 F.2d 88, 96 (1st Cir. 1990).
 The trial court enjoys considerable leeway in making
decisions of this sort. Thus, once the trial court has struck the
balance, an appellate court will review its determinations only for
mistake of law or abuse of discretion. See Standard Fin. Mgmt.,
830 F.2d at 411. In these purlieus, as elsewhere, a district court
may abuse its discretion by ignoring a material factor that
deserves significant weight, relying on an improper factor, or,
even if it mulls only the proper mix of factors, by making a
serious mistake in judgment. See Henry v. INS, 74 F.3d 1, 4 (1st
Cir. 1996); Independent Oil & Chem. Workers of Quincy, Inc. v.
Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988).
 In this case, the district court rescinded the seal order
after a brief colloquy with counsel for Putnam, Siedle, and the New
York Times. The court did not write a decision or otherwise detail
its reasons for lifting the seal order. Thus, our review proceeds
from the historical facts (which, insofar as pertinent here, are
largely uncontested), coupled with the rather meager statements
found in the transcript of the conference.
 The relevant facts include Siedle's service as Putnam's
in-house counsel (giving rise to an attorney-client privilege) and
the nature of his duties (lending plausibility to the claim that
the passages about which Putnam complains reflect information
acquired during and in the course of the attorney-client
relationship). The pertinent portions of the transcript are less
informative. Once the newspaper's attorney requested that the
court abrogate the seal order, the district judge asked Putnam's
counsel: "[W]hat is it about this case that merits the sealing of
the documents? Just because it is going to be a news story, why is
that different from hundreds of other cases that w[i]nd their way
through the Federal Court?" Putnam's lawyer responded with a
narrative history of the case and noted that Siedle's filings
included privileged attorney-client information. The judge
replied: "That is another lawsuit, maybe." He then observed that
the allegedly privileged material seemed necessary to establish
Siedle's claim and stated his intention to lift the seal order. 
Later in the conference, Putnam's counsel beseeched the judge to
revisit his decision and offered a brief on the point. The judge
declined the proffer and advised counsel that an order unsealing
the case file would issue forthwith.
 At some level, the transcript suggests that the district
court viewed Putnam's justification for retaining the seal order as
based upon nothing more than fear of adverse publicity. If that
were so, lifting the seal order would have been proper. The mere
fact that judicial records may reveal potentially embarrassing
information is not in itself sufficient reason to block public
access. See, e.g., Central Nat'l Bank of Mattoon v. United States
Dep't of Treasury, 912 F.2d 897, 900 (7th Cir. 1990); Brown &
Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179-80 (6th Cir.
1983). Here, however, it is crystal clear that Putnam put forward
a valid legal reason, apart from any generalized concerns about
notoriety, for championing a seal order: it sought to prevent
Siedle from unilaterally placing its privileged attorney-client
information in the public domain.
 The critical role that attorney-client privilege plays in
facilitating the administration of justice is beyond question, see,
e.g., Upjohn Co. v. United States, 449 U.S. 383, 389 (1981);
Whitehouse v. United States Dist. Court for the Dist. of R.I., 53
F.3d 1349, 1360 (1st Cir. 1995), and we need not wax longiloquent
in its defense. Suffice to say that the interest in preserving a
durable barrier against disclosure of privileged attorney-client
information is shared both by particular litigants and by the
public, and it is an interest of considerable magnitude. Indeed,
this is precisely the kind of countervailing concern that is
capable of overriding the general preference for public access to
judicial records. See Publicker Indus., Inc. v. Cohen, 733 F.2d
1059, 1073 (3d Cir. 1984); Crystal Grower's Corp. v. Dobbins, 616
F.2d 458, 461-62 (10th Cir. 1980).
 In this instance, we discern no evidence that the
district court identified and balanced the interests at stake, or
that the court endeavored to determine whether any information
contained in Siedle's filings actually fell within the ambit of the
attorney-client privilege. In the circumstances at hand, these
omissions amount to an abuse of discretion. We explain briefly.
 The information that Putnam wishes to keep under seal
appears on its face to be subject to both the attorney-client
privilege and the parallel confidentiality requirements imposed by
the Agreement. In the idiom of DR 4-101, the information is
seemingly of the type "gained in the professional relationship,"
and is matter "that the client has requested be held inviolate" and
that "would likely . . . be detrimental to the client" if revealed. 
Supreme Judicial Court Rule 3:07, Canon 4, DR 4-101. Indeed,
Siedle does not seriously contend that the information falls beyond
the ken of these requirements. He urges instead that an exception
governs here because disclosure of the information is necessary "to
defend himself . . . against an accusation of wrongful conduct." 
Id. DR 4-101(C)(4). We find this argument unpersuasive.
 Massachusetts narrowly construes the exceptions to an
attorney's duty to guard client confidences. See GTE Prods. Corp.v. Stewart, 653 N.E.2d 161, 166-67 (Mass. 1995). To be sure, DR 4-
101(C)(4)'s disclosure provisions empower an attorney to reveal
information that ordinarily would be sacrosanct in order to defend
himself against charges of ineffective assistance, see Commonwealthv. Woodberry, 530 N.E.2d 1260, 1261 (Mass. App. Ct. 1988), or
professional malpractice, see Glenn v. Aiken, 569 N.E.2d 783, 788
(Mass. 1991). While Woodberry illustrates that the "accusation of
wrongful conduct" of which DR 4-101(C)(4) speaks need not
necessarily involve an actual suit filed by a quondam client
against his former attorney, it cannot be gainsaid that DR 4-
101(C)(4) creates a defensive mechanism for lawyers under siege. 
Siedle has not pointed us to, and our research has failed to
unearth, a single reported case from any jurisdiction in which an
attorney has been permitted to use confidential information
offensively when the attorney chafed at the client's criticism of
his work (even if the attorney viewed that criticism as
defamatory). The only reported case dealing with a similar factual
situation holds precisely to the contrary. See Eckhaus v. Alfa-
Laval, Inc., 764 F. Supp. 34, 37-38 (S.D.N.Y. 1991).
 We believe that the exception is designed to function
only as a shield, not as a sword. Consequently, interpreting DR 4-
101(C)(4) to allow disclosure under the circumstances of this case
would work a substantial and detrimental change in the integrity of
the attorney-client privilege as that privilege has been enunciated
in Massachusetts. In our judgment, such a change would be
antithetic to applicable ethical rules. Moreover, the
Massachusetts courts have cautioned against reading exceptions to
the duty of confidentiality too broadly and that caution counsels
convincingly against an unprecedented expansion of DR 4-101(C)(4)
along the lines advocated by Siedle. Cf. Carlton v. Worcester Ins.
Co., 923 F.2d 1, 3 (1st Cir. 1991) (cautioning that federal courts
exercising diversity jurisdiction generally should avoid steering
state law into uncharted waters).
 The inapplicability of Siedle's claimed exception to his
duty of confidentiality brings us full circle. Without further
factfinding, we are left at this stage of the litigation with
information in various filings that appears to fall within the
attorney-client privilege. There is no hint of waiver; indeed,
Putnam has vigorously pressed its attorney-client privilege
throughout. The fact that the allegedly privileged information may
be necessary to permit Siedle to plead his claim with the requisite
specificity a fact alluded to both by Siedle and by the lower
court is beside any pertinent point. Merely sealing that
information would not in any way render Siedle's complaint
inadequate. Finally, if the appropriate parts of the record do not
remain sealed for the time being, Putnam irretrievably will lose
the benefit of a privilege that, on the face of things, appears to
attach.
 When an attorney and a former client embroil themselves
in adversarial litigation, the right of public access to judicial
records stands in sharp contrast to the lawyer's duty to hold
information obtained from the client during the course of
representation in the strictest confidence. A delicate balance
must be struck between these competing concerns. We hold that the
court below misgauged this balance. Putnam has made a sufficient
showing that various filings contain privileged information, and
without either an adjudication of the privilege question or an
appropriate seal order, Putnam will lose the entire benefit of the
putative privilege. We cannot countenance such a result. SeeStandard Fin. Mgmt., 830 F.2d at 407; Irons, 811 F.2d at 683-84.
 Let us be perfectly clear. We do not hold that the
materials which Putnam claims are privileged necessarily must
remain under permanent seal. As the record develops and additional
facts are adduced, the district court may find that Putnam's claims
of privilege are unsupported or that some applicable exception
penetrates the attorney-client shield. Until such time, however,
we hold that Putnam's unrebutted prima facie showing that the
attorney-client privilege applies entitles it to protection. Cf.Publicker Indus., 733 F.2d at 1073 (suggesting that, to ensure the
benefit of the privilege, a court may enjoin the disclosure of
information "arguably within the attorney-client privilege").
 We need go no further. We reverse the district court's
unsealing order and remand for further proceedings consistent
herewith, including the entry of an appropriate seal order. To
this end, we note that on March 6, 1998, this court issued an order
designed to protect Putnam's claim of attorney-client privilege
during the pendency of its appeal. We commend the basic framework
of this order to the court below, as we believe that it provides an
appropriate (and minimally intrusive) model for protecting arguably
privileged material while at the same time minimizing the
concomitant curtailment of the public's right of access to court
filings. Until the district court enters a fresh seal order, our
March 6 order shall remain in force.

 We reverse the order unsealing the record in this case
and remand for the entry of a seal order consistent with this
opinion. Costs to appellant.