Williams v. Cobb                    CV-03-472-PB  12/27/04

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Kyle Williams**</u>

    **v.**                                  Civil No. CV-03-472-PB
                                        Opinion No. 2004 DNH 187
<u>**E. Neill Cobb, et al.**</u>



<u>**MEMORANDUM AND ORDER**</u>

Kyle Williams brings this action against the Town of Newbury
and one of its police officers, E. Neill Cobb.  Williams charges
that Cobb violated his Fourth Amendment rights by detaining and
searching him without sufficient justification and by using
excessive force in effecting the search.  He argues that the Town
is liable for Cobb's misconduct because it failed to properly
train and supervise him.  Defendants have responded with a motion
for summary judgment.  They argue that Cobb is protected from
suit by the doctrine of qualified immunity and that the evidence
does not support Williams' municipal liability claims.  I reject
Cobb's qualified immunity argument but agree that the Town is
entitled to summary judgment.

## I.  BACKGROUND

Officer Cobb encountered Kyle Williams between 11:00 p.m. and midnight on June 26, 2001 while Cobb was patrolling Blodgett's Landing in Newbury, New Hampshire.  Williams had his right arm in a sling and he was carrying a beer bottle in his left hand.  Cobb stopped Williams and demanded that he produce identification because he suspected that Williams was underage.

Williams provided a New Hampshire driver's license that confirmed that he was, in fact, of legal drinking age.  Cobb then asked Williams how much he had had to drink and Williams told him that he had had one and one half 20-ounce beers.  Cobb told Williams that he thought Williams was lying and instructed him to empty his pockets.  Williams complied, but immediately returned the contents to his pockets.

Cobb then attempted to frisk Williams.  Williams initially acquiesced but he pulled away as Cobb's hand passed over his groin area.  Cobb responded by reaching for his gun and unfastening his holster.  After Williams agreed to cooperate, Cobb moved behind Williams and instructed him to place his left hand behind his back.  He then forcibly removed Williams' right

arm from its sling and attempted to handcuff him. Fearing that Cobb would further injure his right shoulder, Williams again pulled away and told Cobb not to grab his right arm. Cobb responded by placing Williams in a head lock and throwing him up against a nearby car. Williams again told Cobb that he was willing to cooperate but he pulled away yet again when Cobb made a second attempt to grab his right arm. In response, Cobb threatened Williams with pepper spray, threw him to the ground, got on top of him, and placed his knee on Williams' neck.

Williams was later charged with possession of a controlled substance and resisting detention. Both charges were ultimately dropped.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A trial is only necessary if there is a genuine factual

issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248.

In ruling on a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the non-moving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citation omitted). Neither conclusory allegations, improbable

inferences, nor unsupported speculation are sufficient to defeat summary judgment. See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

### III. DISCUSSION

#### A. Officer Cobb

Williams asserts two Fourth Amendment claims against Officer Cobb. First, he argues that Cobb lacked sufficient justification to detain and frisk him. Second, he argues that Cobb used excessive force against him. Cobb counters that he is protected from suit on these claims by the doctrine of qualified immunity.

##### 1. Qualified Immunity

"The doctrine of qualified immunity protects 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mutter v. Town of Salem, 945 F. Supp. 402, 405 (D.N.H. 1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A two-part inquiry is used to determine whether an officer is entitled to qualified immunity. First, I consider whether the facts alleged, taken in

the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right. Santana v. Calderon, 342 F.3d 18, 23 (1st Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). If a constitutional violation occurred, I then determine whether "the contours of this right are 'clearly established' under then-existing law so that a reasonable officer would have known that his conduct was unlawful." Santana, 342 F.3d at 23 (quoting Dwan v. City of Boston, 329 F.3d 275, 279 (1st Cir. 2003). If the law would not have put a reasonable officer on notice that his or her conduct was unlawful, summary judgment based upon qualified immunity is appropriate. See Kelley v. Laforce, 288 F.3d 1, 6 (1st Cir. 2002); See also Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Officer Cobb does not contend that the applicable law was unclear. Thus, I confine my analysis to his claims that he acted lawfully.

2. Williams' Unlawful Search and Seizure Claim

Williams argues that Officer Cobb violated his Fourth Amendment rights by continuing to detain him after Cobb

established that he was of lawful drinking age.[1]  He also charges that Cobb violated his Fourth Amendment rights by frisking him without sufficient reason to suspect that he was armed.  Cobb responds by claiming that he is entitled to qualified immunity because his actions were authorized by Terry v. Ohio, 392 U.S. 1 (1968).

Terry permits officers to briefly detain and frisk suspects under certain limited circumstances.  See id. at 27.  A brief detention must be supported by reasonable suspicion that the suspect has engaged in criminal activity.  U.S. v. Moore, 235 F.3d 700, 703 (1st Cir. 2000) (citing Terry, 235 U.S. at 30).  A frisk must be supported by a reasonable suspicion that a suspect is armed and dangerous.  Terry at 30.  If suspicion of criminal behavior is dispelled through the officer's initial inquiries, further detention is unlawful.  Id.

Cobb had no reason to suspect that Williams was too young to lawfully drink once Williams produced a driver's licence that demonstrated that he was over 21.  Nevertheless, Cobb argues that he had a right to continue to detain Williams in order to

---

[1] Williams does not challenge Cobb's decision to briefly question him to determine if he was old enough to drink.

determine whether Williams should be taken into protective custody for intoxication pursuant to N.H. Rev. Stat. Ann. § 172-B:3.[2] Cobb claims that he had reason to suspect that Williams might be intoxicated because he was carrying a beer bottle, he was swaying, he fumbled for his identification, and he had glassy eyes. Williams challenges Cobb's claim and argues that a reasonable officer in Cobb's position had no reason to suspect that he was intoxicated because he had only consumed 1-1/2 beers. Whether Williams exhibited the symptoms of intoxication on which Cobb's argument is based presents a disputed question of material fact that will have to be resolved by a jury. Therefore, Cobb is not entitled to summary judgment with respect to his claim that he was entitled to detain Williams even after Williams had proved that he was old enough to lawfully drink.

Williams alternatively claims that Officer Cobb lacked sufficient justification to frisk him even if Cobb reasonably

---

[2] N.H. Rev. Stat. Ann. § 172-B:3 provides in pertinent part that "[w]hen a peace officer encounters a person who in the judgment of the officer is intoxicated as defined in RSA 172-B:1 X, the officer may take such person into protective custody . . . ." N.H. Rev. Stat. Ann. § 172-B:1, X defines intoxicated as "a condition in which the mental or physical functioning is substantially impaired and as a result of the presence of alcohol in his system."

suspected that he might be intoxicated.[3]  Cobb responds by claiming that he was entitled to frisk Williams because he observed a bulge in Williams' pants pocket that made him suspect that Williams might be armed.  In making this argument, Cobb attaches special significance to the fact that he could see the bulge even after Williams had purportedly removed everything from his pants pocket.  This argument, however, also hinges on a disputed fact.  Williams claims that he removed everything from his pockets when Cobb instructed him to do so.  He thus disagrees with Cobb's assertion that there was something in his pants pocket that might have produced the alleged bulge.  Whether Cobb in fact observed a bulge in Williams' pants pocket is a question of fact that must be left for a jury to answer.  Summary judgment is therefore denied.

3.   <u>Williams' Claim that Cobb Used Excessive Force</u>

Williams next argues that Cobb used excessive force against him during the search.  Cobb counters by arguing that he is entitled to qualified immunity because the force that he used was reasonable under the circumstances.

---

[3]  Williams does not challenge the lawfulness of Cobb's demand that he empty his pockets.

Claims that a police officer used excessive force in searching a suspect are analyzed under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 397 (1989). To recover on such a claim, a plaintiff must demonstrate that the force used by the defendant was objectively unreasonable given the totality of the relevant circumstances. See Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002). Among the factors that a court should consider are: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resists arrest or attempts to evade arrest by flight. See id. The claimant's physical condition may also be a relevant factor if the defendant knew or reasonably should have known that the claimant suffered from a preexisting condition that might make an otherwise reasonable use of force unreasonably painful or injurious. See Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998) (citing Walton v. City of Southfield, 995 F.2d 1331 (6th Cir. 1993)).

I am not persuaded by Officer Cobb's claim that his use of force was, without question, reasonable under the circumstances. As I have explained, Cobb no longer had reason to suspect that Williams was engaging in criminal activity once Williams

-10-

demonstrated that he was old enough to drink. Moreover, if Williams' version of the facts is true, although Williams recoiled when Cobb attempted to frisk him and then later resisted when Cobb attempted to pull his injured arm behind his back, Williams never threatened Cobb nor attempted to flee. Instead, he repeatedly stated that he would cooperate but that he did not want Cobb to pull on his injured right arm. Under the facts as Williams has described them, Cobb's multiple attempts to pull Williams' injured arm behind his back and his other attempts to forcibly restrain Williams could be deemed to be an unreasonable use of force. Material facts that bear on Cobb's excessive force claim thus remain in dispute. Accordingly, Cobb's motion for summary judgment is denied.

## B. Town of Newbury

Williams has also sued the Town of Newbury. He contends that the Town is liable for Williams' unconstitutional conduct because it failed to properly train and supervise him.

As the First Circuit has explained, "liability will attach to the municipal employer where its failure to properly train its officers 'amounts to deliberate indifference to the rights of persons with whom the police come into contact' and where the

-11-

specific deficiency in training is the 'moving force' behind a constitutional injury." <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-89 (1989)). The same standard applies when, as in this case, a failure to supervise claim is brought against a municipality. <u>See</u> <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 127 (2d Cir. 2004).

Williams has failed to produce any significant evidence to support his contention that the Town acted with deliberate indifference in failing to train or supervise Officer Cobb. It is uncontradicted that though Cobb had only two and one-half years of part-time experience, he was trained at the New Hampshire Police Academy, and was certified as an officer only after attending New Hampshire's Standards and Training Part Time Academy. Both programs include tutorials on the contours of search and seizure law.

Williams' only proof that Officer Cobb was given authority without adequate training or supervision is his claim that Cobb violated both the Constitution and Newbury Police procedure on the night in question. <u>See</u> Obj. to Defendants' Motion for Summary Judgment (Doc. No. 8) at 22-24. Indeed, much of

-12-

Williams' brief contrasts Cobb's behavior with rules set forth in the Newbury Police Manual. Id. at 23 (describing situations in which it is appropriate to brandish a firearm). Rather than supporting Williams' argument, however, these guidelines stand as evidence that the Town expected a measure of professionalism from Cobb and that Cobb failed to meet that standard.

Other than conclusory allegations, Williams offers no proof that a reasonable jury could rely upon to hold that Newbury acted with deliberate indifference. He offers no evidence demonstrating a history of police abuse generally, nor evidence of a pattern of bad behavior by Officer Cobb specifically. Opposition at the summary judgment stage requires more. See Carroll, 294 F.3d at 236-37. I therefore conclude that no reasonable jury could find the Town liable under § 1983 on a theory of municipal liability.

## IV. CONCLUSION

For the reasons set forth in this Memorandum and Order, I deny Cobb's request for summary judgment based on the doctrine of qualified immunity but grant the Town's request with respect to

the federal claims that Williams has asserted against it.  I also decline defendants' request to dismiss Williams' state law claims for lack of supplemental jurisdiction.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

December 27, 2004

cc:  Steven Hengen, Esq.
     Brad Wilder, Esq.